UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stephen Baptiste

    v.                                                            Civil No. 16-cv-439-JD
                                                                   Opinion No. 2017 DNH 098
Joseph Foster, New Hampshire
Attorney General, et al.


O R D E R

Stephen C. Baptiste, who is an inmate at the New Hampshire State Prison for men and is proceeding pro se, brought suit against the New Hampshire Attorney General and officials and employees of the New Hampshire Department of Corrections, alleging claims under 42 U.S.C. § 1983, that arose from a group strip search at the prison. As allowed on preliminary review, Baptiste brings a claim for damages against Officers John Doe #2, Jardine, Fouts, Orlando, Foncier, alleging that the strip search violated his Fourth Amendment right to be protected from unreasonable searches. The defendants move to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Baptiste did not file a response to the motion.

## Standard of Review

Under Rule 12(b)(6), the court must determine whether the plaintiff has alleged sufficient facts to support a plausible

claim.  In re Curran, --- F.3d ---, 2017 WL 1405211, at *3 (1st Cir. Apr. 20, 2017).  The court accepts the properly pleaded facts as true and takes inferences from the facts in the light most favorable to the non-moving party.  O'Shea v. UPS Retirement Plan, 837 F.3d 67, 77 (1st Cir. 2016).  Conclusory allegations and mere statements of the elements of a cause of action are not sufficient to avoid dismissal.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## Background

The prison hosts a holiday event for inmates and their families in December each year.  The event is held in the prison gymnasium with each prison unit assigned a day for the party.  Inmates apply to attend the party and must meet certain criteria to be allowed to attend.

Baptiste's unit was scheduled to attend the holiday event on December 18, 2014.  The event began at 6:30 p.m. and lasted until 8:45 p.m.  When the visitors were escorted out of the gym after the event, the inmates remained.

The corrections officers announced that there would be a strip search of the inmates before they were allowed to leave the gym.  The inmates were called to tables in groups of eight for corrections officers to conduct the strip searches, including visual body cavity searches.  The strip searches were

done in the open in the gym, without privacy screens, and in the view of a female corrections officer, Kelly Jardine, who was standing on the stairs in the gym. There was also a video surveillance camera operating during the searches.

In early January of 2015, Baptiste complained to Major Fouts about the strip search and about a female officer being present. Major Fouts denied that a female officer had been present. On January 22, Baptiste went to mental health sick call to report the circumstances of the strip search and to seek treatment for the trauma he experienced during the search. Baptiste met with Jean Carrol to discuss the strip search and to provide a statement.

Baptiste wrote to the New Hampshire Attorney General Joseph Foster about the strip search. Foster replied that he had turned the investigation over to Colon Forbes in the department of professional standards. On January 29, 2015, Baptiste sent a grievance form to Warden Gerry about the strip search, which was denied as untimely. In February of 2015, Baptiste sent a grievance to Commissioner William Wrenn who responded that no female corrections officer was present during the strip search and that the strip search procedure would be reviewed and changed for the next year.

Discussion

The defendants move to dismiss Baptiste's claim that the strip search violated his Fourth Amendment rights. They argue both that Baptiste has not alleged facts to show a violation of his Fourth Amendment rights and that they are protected by qualified immunity. Baptiste did not file a response to the motion.

A.  Fourth Amendment

Prison inmates retain Fourth Amendment rights against unreasonable searches and seizures. Bell v. Wolfish, 441 U.S. 520, 545 (1979). Inmates' rights, however, are subject to restrictions and limitations that are imposed because of "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution." Id. at 546. Strip searches of inmates following contact visits, including visual body cavity searches, are reasonable security measures to deter the possession of contraband. Id. at 559-60; see also Florence v. Bd. of Chosen Freeholders of County of Burlington, 566 U.S. 318, 326-27 (2012) (discussing Bell, 441 U.S. at 558); Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 68 (1st Cir. 2003).

Strip searches and body cavity searches must be conducted in a reasonable manner that is justified by sufficient legitimate penological interests to outweigh the significant

privacy interests of the inmate.  Bell, 441 U.S. at 559-60; Williams v. City of Cleveland, 771 F.3d 945, 951 (6th Cir. 2014); Shapiro v. Rynek, 212 F. Supp. 3d 990, 996 (Colo. 2016); Lewis v. Chatterson, 2015 WL 9674792, at *6 (W.D. La. Oct. 7, 2015); Shapiro v. Falk, 2014 WL 4651952, at *9 (D. Colo. 2014); Zunker v. Bertrand, 798 F. Supp. 1365, 1369-70 (E.D. Wisc. 1992).  Inmates may be strip searched in the presence of other inmates who are also being searched when that is necessary to prevent introduction of contraband into the prison.  Fernandez v. Rapone, 926 F. Supp. 255, 261 (D. Mass. 1996).  The presence of a guard or officer of the opposite sex during a strip search, however, may violate the inmate's constitutional rights, depending on the circumstances.  Cookish v. Powell, 945 F.2d 441, 447 (1st Cir. 1991); accord Baggett v. Ashe, 41 F. Supp. 3d 113, 119-21 & 125-26 (2014); see also Collins v. Knox County, 569 F. Supp. 2d 269, 282-83 (D. Me. 2008).

The strip search and body cavity search conducted by the defendants was based on the contact visit between inmates and guests during the holiday party, which is a legitimate reason for a strip search.  The manner of conducting the search, however, raises Fourth Amendment concerns.

The inmates were strip searched with visual body cavity inspection in the gym in the presence of the other inmates and officers and without any privacy measures.  The searches were

videotaped, and one of the officers present was female. The defendants contend that "there is nothing about the presence of other inmates, a female corrections officer, or a video surveillance camera" which would implicate the Fourth Amendment.

As noted above, whether a strip search was reasonable for purposes of the Fourth Amendment requires consideration of the manner in which the search was conducted. Importantly, in the context of a motion to dismiss, the defendants do not provide any justification for conducting the strip searches and visual body cavity searches in the open gymnasium instead of in a more private environment. Baptiste alleges that the officers should have used privacy screens to conduct the searches. Therefore, the constitutionality of the search cannot be determined at this stage of the case without factual development of the circumstances that required the searches to be conducted in that manner. See, e.g., Shapiro, 2014 WL 4651952, at *9.

B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 136 S. Ct. 305, 308 (2016) (internal quotation marks omitted). "[T]he clearly established law must be 'particularized' to the facts of

the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That standard does not require a case on point but does require "a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." Id.

The defendants are entitled to qualified immunity in this case unless the rights Baptiste asserts were clearly established by December of 2014 when the search occurred. The Supreme Court held in 1979, in the context of determining whether a strip search and visual body cavity search of a pretrial detainee violated the Fourth Amendment, that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell, 411 U.S. at 559. Instead, the reasonableness of the search depends on "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

In Cookish, which was decided in 1991, the First Circuit held that an officer of the opposite sex who views a strip search of an inmate violates his or her constitutional rights unless the observation was due to an emergency or was "inadvertent, occasional, casual, and/or restricted." 945 F.2d at 447. As alleged, Jardine, a female officer, was standing on the gym stairs with a view of the searches. She was not in

7

close proximity to Baptiste, however, and the circumstances alleged do not suggest observation that was other than inadvertent or casual.  Cf. Baggett, 41 F. Supp. 3d at 120-21 (holding that a male guard's presence during a strip search of a female inmate when the male guard was only a few feet away and was videotaping the search violated the inmate's rights). Therefore, the law was not clearly established that Jardine's presence in the gym during Baptiste's strip search and visual body cavity search would violate his rights.

The First Circuit has suggested that searches of inmates should be conducted in private areas.  See United States v. Cofield, 391 F.3d 334, 337 (1st Cir. 2004); Wood, 354 F.3d at 69.  The First Circuit has not held, however, that strip searches of inmates conducted as part of a group violate their constitutional rights.  Other courts have come to different conclusions about the constitutionality of group strip searches, depending on the circumstances.  See, e.g., Williams, 771 F.3d at 954; Elliott v. Lynn, 38 F.3d 186, 191-92 (5th Cir. 1994); Peek v. City of New York, 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2004).  Therefore, it was not clearly established that the defendants' search of Baptiste in a group of inmates without privacy screens would violate his constitutional rights.

Because there is no case before December of 2014 holding that searches conducted in the manner used by the defendants to

8

search Baptiste violated an inmate's Fourth Amendment rights, the defendants are entitled to qualified immunity.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 14) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

May 25, 2017

cc: Stephen C. Baptiste, pro se
    Francis Charles Fredericks, Esq.