UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Stephen Baptiste

    v.

Gordon MacDonald,[1] New Hampshire
Attorney General, et al.

Civil No. 16-cv-439-JD
Opinion No. 2017 DNH 140


O R D E R


Stephen C. Baptiste, who is an inmate at the New Hampshire State Prison for men and is proceeding pro se, brought suit against the New Hampshire Attorney General and officials and employees of the New Hampshire Department of Corrections, alleging claims under 42 U.S.C. § 1983, that arose from a group strip search at the prison.  The defendants moved to dismiss Baptiste's claims, and Baptiste did not file a response.  The court granted the defendants' motion to dismiss, and judgment was entered on May 26, 2017.

Baptiste moves for reconsideration on the grounds that he mailed a response to the motion to dismiss seven days after receiving the motion to dismiss.  Because the court did not receive Baptiste's response, he was granted an opportunity to

_____

[1] Gordon MacDonald, the current Attorney General, is automatically substituted for Joseph Foster.  Fed. R. Civ. P. 25(d).

file the response in support of his motion for reconsideration,
which he has done.  The defendants object to reconsideration.

## Standard of Review

Reconsideration of a judgment is deemed to be a motion to
amend or alter judgment under Federal Rule of Civil Procedure
59(e).  Young v. Gordon, 330 F.3d 76, 80 (1st Cir. 2003).
Relief from a judgment under Rule 59(e) is "an extraordinary
remedy which should be used sparingly." Palmer v. Champion
Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation
marks omitted).  To support a motion to alter or amend a
judgment, the moving party must show "manifest errors of law or
fact, newly discovered or previously unavailable evidence,
manifest injustice, [or] an intervening change in controlling
law." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7, n.2
(1st Cir. 2005) (paraphrasing 11 C. Wright, et al., Federal
Practice & Procedure § 2819.1 (2d ed. 1995)).

## Discussion

Given Baptiste's representation that he attempted to file a
response to the defendants' motion to dismiss, in the interests
of justice the court will consider the objection he has filed to
determine whether the motion to dismiss was properly granted.
The court provided the following background information, taken
from Baptiste's complaint, in the prior order.

A.  Background

The prison hosts a holiday event for inmates and their families in December each year.  The event is held in the prison gymnasium with each prison unit assigned a day for the party. Inmates apply to attend the party and must meet certain criteria to be allowed to attend.

Baptiste's unit was scheduled to attend the holiday event on December 18, 2014.  The event began at 6:30 p.m. and lasted until 8:45 p.m.  When the visitors were escorted out of the gym after the event, the inmates remained.

The corrections officers announced that there would be a strip search of the inmates before they were allowed to leave the gym.  The inmates were called to tables in groups of eight for corrections officers to conduct the strip searches, including visual body cavity searches.  The strip searches were done in the open in the gym, without privacy screens, and in the view of a female corrections officer, Kelly Jardine, who was standing on the stairs in the gym.  There was also a video surveillance camera operating during the searches.

In early January of 2015, Baptiste complained to Major Fouts about the strip search and about a female officer being present.  Major Fouts denied that a female officer had been

present.  On January 22, Baptiste went to mental health sick call to report the circumstances of the strip search and to seek treatment for the trauma he experienced during the search. Baptiste met with Jean Carrol to discuss the strip search and to provide a statement.

Baptiste wrote to the New Hampshire Attorney General Joseph Foster about the strip search.  Foster replied that he had turned the investigation over to Colon Forbes in the department of professional standards.  On January 29, 2015, Baptiste sent a grievance form to Warden Gerry about the strip search, which was denied as untimely.  In February of 2015, Baptiste sent a grievance to Commissioner William Wrenn who responded that no female corrections officer was present during the strip search and that the strip search procedure would be reviewed and changed for the next year.

B.  <u>Baptiste's Objection</u>

Based on the facts alleged in the complaint and the defendants' motion to dismiss, the court concluded that the defendants were entitled to qualified immunity because there was no case that established before 2014 that strip searches conducted in the manner used by the defendants, without privacy screens, would violate an inmate's constitutional rights.  In support of reconsideration, Baptiste contends that the

defendants are not entitled to qualified immunity because they violated the New Hampshire Department of Corrections Policy and Procedure Directive, Statement Number 5.19 ("P.P.D. 5.19").[2]  He also asserts that the defendants did not follow their training.

P.P.D. 5.19 is titled "Prison Rape Elimination Act Procedures."[3]  The policies and procedures pertain to rape and sexual assault, which did not occur in this case.  Baptiste does not cite any part of P.P.D. 5.19 that addresses the proper procedures for conducting strip searches in the context of what occurred in this case.[4]

Although Baptiste asserts that the defendants should lose qualified immunity because they did not follow their training in the way they conducted the strip search, he provides no evidence of what training was not followed.  More importantly, in the context of qualified immunity from liability for an alleged constitutional violation, corrections officers are protected unless they violated an inmate's clearly established

---

[2] Baptiste mistakenly believes that P.P.D. 5.19 was imposed on the prison by the President of the United States.

[3] Although Baptiste did not file a copy of P.P.D. 5.19, the court was able to obtain a copy that was filed in another case.

[4] For example, part V addresses the procedures to be used following a complaint or report of sexual assault and requires at subpart A.3.h. that strip searches conducted on a victim before transport for medical treatment should be conducted with "utmost sensitivity" and "the lowest level of intrusion."

constitutional right. Ziglar v. Abbasi, 127 S. Ct. 1843, 1866-67 (2017). As the court explained in the prior order, there was no clearly established law in 2014 that strip searches without privacy screens would violate inmates' Fourth Amendment rights.

The court has considered Baptiste's objection to the defendants' motion to dismiss. The defendants' are entitled to qualified immunity from liability and, therefore, Baptiste's claim that the defendants violated his Fourth Amendment right against unreasonable searches was properly dismissed.

### Conclusion

For the foregoing reasons, the plaintiff's motion for reconsideration (document no. 18) is denied.

Therefore, Baptiste's complaint was properly dismissed, judgment has been entered, and the case remains closed.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

July 17, 2017

cc: Stephen C. Baptiste, pro se
    Francis Charles Fredericks, Esq.